1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12

DIANA MUGNO,

Case No. 16-CV-06922-LHK

13

Plaintiff,

**ORDER GRANTING DEFENDANTS'
MOTIONS TO DISMISS**

14

v.

Re: Dkt. Nos. 15, 16

15

HAZEL HAWKINS MEMORIAL
HOSPITAL, et al.,

16
17

Defendants.

18        Plaintiff Diana Mugno ("Plaintiff") sues Defendants Hazel Hawkins Memorial Hospital

19 ("Hazel Hawkins"), San Benito Health Care District ("the District"), and Kenneth Underwood

20 ("Underwood") (collectively, "Defendants") for causes of action arising out of Plaintiff's

21 termination.  ECF No. 5 (First Amended Complaint, or "FAC").  Before the Court is a motion to

22 dismiss filed by Hazel Hawkins, the District, and Underwood in his official capacity (collectively,

23 the "District Defendants"), and a separate motion to dismiss filed by Underwood in his individual

24 capacity.  ECF Nos. 15, 16.  The Court finds these matters suitable for resolution without oral

25 argument and hereby VACATES the motions hearing set for June 8, 2017, at 1:30 p.m.  Having

26 considered the parties' submissions, the relevant law, and the record in this case, the Court hereby

27 GRANTS Defendants' motions to dismiss.

28

## I.     BACKGROUND

### A.     Factual Background

The District is a healthcare district within the state of California that owns and maintains Hazel Hawkins.[1]  FAC ¶¶ 6, 9, 11.  Underwood is the Chief Executive Officer ("CEO") of the District.  *Id.* ¶ 12.

Plaintiff is a registered nurse and was employed by the District as the Director of Rural Health Clinics.  *Id.* ¶¶ 1, 8, 26.  Plaintiff was hired in this role on March 11, 2013.  *Id.*  Plaintiff's job duties included "oversee[ing] the operation of services provided through the Clinics," and "setting policy and directing, administering, and evaluating programs consistent with the organization goals and objectives."  *Id.* ¶ 28.

On March 19, 2016, a male physician, Dr. Herrick, treated a female patient at a clinic after hours.  *Id.* ¶ 32.  According to the FAC, the physician instructed the staff to register the patient, but not to charge the patient.  *Id.*  On March 22, 2016, a male physician's assistant, Oskar Lizarraga-Davis ("Lizaarraga-Davis"), treated the same female patient for a follow up visit, but no charge was generated for the follow-up visit.  *Id.* ¶ 33.  Instead, the visit was documented as a "telephone encounter."  *Id.*  On March 29, 2016, Lizarraga-Davis treated the same female patient and again did not generate charges.  *Id.* ¶ 34.  The treatment was charged as a "virtual visit."  *Id.*

On March 31, 2016, Plaintiff sent an email to Chief Nursing Officer Lois Owens ("Owens"), and reported to Owens the fact that a female patient had been treated after hours and that no charges were generated.  *Id.* ¶ 30.  Owens told Plaintiff to email Underwood and Mark Robinson ("Robinson"), the Chief Financial Officer ("CFO") of the District.  *Id.*

Plaintiff reported her complaint to Underwood and Robinson on March 31, 2017.  *Id.*  The FAC alleges, presumably incorrectly, that on March *30*, 2016—the day before Plaintiff allegedly

---

[1] District Defendants state that Hazel Hawkins was named erroneously as a defendant because Hazel Hawkins is not a separate legal entity from the District.  *See* ECF No. 15, at 1.  Rather, Hazel Hawkins is owned and operated by the District.  *Id.*  Moreover, although the FAC alleges that Plaintiff was the Director of Rural Health Clinics *for Hazel Hawkins*, the District Defendants state that the District operates four rural health clinics *in addition to* Hazel Hawkins.  *Id.* at 1–2.  It is not clear from either the FAC or Plaintiff's motion how Hazel Hawkins is involved in this case.

reported her complaint to Underwood and Robinson—that Robinson left a message for Plaintiff which indicated that Plaintiff's complaint had been communicated to Underwood. *Id.* ¶ 35. Robinson told Plaintiff that Underwood would discuss Plaintiff's complaint with Dr. Herrick. *Id.*

On May 11, 2016, an approximately 4-year old child fell in an exam room at a clinic while his mother was receiving treatment. *Id.* ¶ 36. "The child sustained a laceration" during the fall and was examined by Dr. Herrick and physician's assistant Lizarraga-Davis. *Id.* The child was observed for approximately 15 to 20 minutes and the mother was informed to follow up with the child's primary care provider. *Id.* The incident was not documented or charted. *Id.*

On May 13, 2016, Plaintiff received an email from the child's primary care provider. *Id.* ¶ 37. The primary care provider expressed frustration that she was not told about what happened to the child prior to the child's appointment. *Id.* After receiving this email, Plaintiff checked the child's charts and noticed that the child's fall had not been documented. *Id.* ¶ 38.

That same day, May 13, 2016, Plaintiff telephoned Chief Nursing Officer Owens and reported the failure to chart the child's fall. *Id.* ¶ 39. Plaintiff thereafter called Lizarraga-Davis and requested that Lizarraga-Davis please document the incident in the child's records. *Id.* Plaintiff told Lizarraga-Davis that the failure to document was "a risk and liability incident." *Id.* Later that day, on May 13, 2016, Plaintiff noted that the requested chart documentation had been entered. *Id.* ¶ 41.

"Within days after [Plaintiff] reported her complaints" to Owens, Dr. Herrick resigned his position as Director of the Family Clinics. *Id.* ¶ 40.

From June 15, 2016 to June 24, 2016, Plaintiff conducted a survey of mid-level medical providers at the clinic regarding process improvements. *Id.* ¶ 42. Plaintiff received positive comments about her performance from the survey. *Id.* Plaintiff also consistently received positive annual evaluations. *Id.* ¶ 43.

On June 27, 2016, Plaintiff received a telephone call at her home from Owens. *Id.* ¶ 44. Owens told Plaintiff that Owens had met with Underwood. *Id.* According to Owens, Underwood "stated that [Plaintiff] was the problem that made it difficult to hire a new medical director, and

that [Plaintiff] was a problem with the providers in the clinic." *Id.* ¶ 44. Owens told Plaintiff that Underwood "had made a decision to restructure the clinics, and that there would now not be a need for a nurse director." *Id.* Owens told Plaintiff that Underwood said that the reorganization "might take place as early as July 1, 2016." *Id.* Plaintiff asked Owens whether Underwood's statement to Owens meant that Plaintiff's position would be eliminated, and Owens replied "Yes, Probably." *Id.* ¶ 45. According to the FAC, "[t]his campaign to eliminate [Plaintiff's] position started in May 2016, right after she notified the CFO and CEO of the complaints about unsafe patient care and conditions that occurred in one of the clinics and culminated in her termination." *Id.* ¶ 45.

Plaintiff was terminated on October 11, 2016. *Id.* ¶ 26. According to the FAC, Underwood "identified and targeted only women employees who had raised and reported complaints of substandard and unsafe patient care to be terminated during the 'restructuring.'" *Id.* ¶ 46. "No male providers' positions were identified for elimination in the CEO's new restructure." *Id.*

**B.  Procedural History**

On July 11, 2016, Plaintiff filed an administrative tort claim with the County of San Benito's board of supervisors. *Id.* ¶ 21. The County of San Benito rejected Plaintiff's tort claim on August 25, 2016. *Id.*

Plaintiff also filed complaints with California's Department of Fair Employment and Housing ("DFEH") and the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 20. On September 19, 2016, the DFEH and EEOC issued Plaintiff right to sue letters. *Id.*

On December 1, 2016, Plaintiff filed a complaint in this Court against Hazel Hawkins, San Benito Health Care District, the County of San Benito, and Underwood, in both his individual and official capacities. ECF No. 1. On December 12, 2016, Plaintiff filed the FAC. *See* FAC.

The FAC alleges 19 causes of action. Counts One through Five allege § 1983 causes of action relating to Defendants' termination of Plaintiff in retaliation for Plaintiff exercising her First Amendment right to free speech. *See id.* ¶¶ 47–121. Counts Six through Thirteen raise §

4

1983 causes of action related to Defendants' termination of Plaintiff in violation of the Fourteenth Amendment. *Id. ¶¶* 122–247. Count Fourteen alleges that the District Defendants violated Title VII by discriminating against Plaintiff on the basis of her gender. *Id. ¶¶* 269–78. Count Fifteen alleges retaliation in violation of California Health and Safety Code § 1278.5. *Id. ¶¶* 280–83. Count Sixteen alleges retaliation in violation of California Labor Code § 1101. *Id. ¶¶* 284–94. Count Seventeen alleges negligence in violation of California Government Code § 815.2. *Id. ¶¶* 295–08. Count Eighteen alleges discrimination in violation of the Fair Housing and Employment Act ("FEHA"), California Government Code § 12940, against the District. *Id. ¶¶* 309–24. Finally, Count Nineteen alleges intentional infliction of emotional distress against only Underwood, presumably in his individual capacity. *Id. ¶¶* 325–28.

On February 14, 2017, the County of San Benito filed a motion to dismiss the FAC. ECF No. 12. On February 15, 2017, the District Defendants filed a motion to dismiss. ECF No. 15 ("Dist. Def. Mot."). On February 15, 2017, Underwood, in his individual capacity, filed a motion to dismiss. ECF No. 16 ("Underwood Mot.").

On February 28, 2017, Plaintiff filed a notice of voluntary dismissal of the County of San Benito. ECF No. 20. On that same day, the Court dismissed the County of San Benito and denied as moot the County of San Benito's motion to dismiss the FAC. ECF No. 21.

On March 1, 2017, Plaintiff filed an opposition to the District Defendants' motion to dismiss. ECF No. 22 ("Pl. Opp."). Plaintiff did not file an opposition to Underwood's motion to dismiss.

On March 8, 2017, Defendants filed replies. ECF Nos. 28 ("Dist. Def. Reply"); ECF No. 29 ("Underwood Reply").

## II.     LEGAL STANDARD

### A.     Motion to Dismiss Under Rule 12(b)(6)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the

United States District Court
Northern District of California

1  plaintiff pleads factual content that allows the court to draw the reasonable inference that the

2  defendant is liable for the misconduct alleged. The plausibility standard is not akin to a

3  'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted

4  unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citation omitted).

5       For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations

6  in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

7  party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

8  However, a court need not accept as true allegations contradicted by judicially noticeable facts,

9  *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and a "court may look beyond the

10  plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into

11  one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 (9th Cir. 2011). Mere "conclusory

12  allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."

13  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).

**B.    Leave to Amend**

15       If the Court concludes that a motion to dismiss should be granted, it must then decide

16  whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave

17  to amend "shall be freely given when justice so requires," bearing in mind "the underlying purpose

18  of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or

19  technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (citation omitted).

20  Nonetheless, a district court may deny leave to amend a complaint due to "undue delay, bad faith

21  or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments

22  previously allowed, undue prejudice to the opposing party by virtue of allowance of the

23  amendment, [and] futility of amendment." *See Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d

24  522, 532 (9th Cir. 2008).

**III.    DISCUSSION**

26      Defendants move to dismiss all 19 claims asserted in the FAC. The Court first addresses the

27  causes of action under § 1983, and then addresses the causes of action under Title VII and FEHA.

28

6

The Court then addresses the remaining state causes of action against the District Defendants, and finally the Court addresses the intentional infliction of emotional distress claim asserted against Underwood in his individual capacity.

## A.    Section 1983 Causes of Action (Counts One through Thirteen)

Plaintiff asserts in Counts One through Thirteen claims under § 1983. Defendants move to dismiss Plaintiff's § 1983 claims on three primary bases. First, Defendants contend that Counts One through Five, which allege § 1983 claims based on violation of Plaintiff's First Amendment rights, fail to state a claim because Plaintiff's alleged speech is not constitutionally protected. Second, Defendants contend that Counts Six through Thirteen, which allege § 1983 claims based on violation of Plaintiff's Fourteenth Amendment rights, fail to state a claim because Plaintiff has no constitutionally protected property interest in her employment. Third, Defendants contend that *all* of Plaintiff's § 1983 causes of action fail for the additional reason that District Defendants are entitled to Eleventh Amendment immunity, and Underwood is entitled to qualified immunity. The Court addresses each of Defendants' arguments in turn.

### 1. Failure to State a § 1983 Claim for First Amendment Retaliation (Counts One through Five)

First, Defendants move to dismiss Counts One through Five of the FAC, which allege that Defendants violated § 1983 by retaliating against Plaintiff for the exercise of her First Amendment rights.[2] These claims all rely on a common contention: that Defendants violated Plaintiff's First Amendment rights by terminating Plaintiff in retaliation for Plaintiff's reports to Owens. According to Plaintiff, her reports to Owens were instances of constitutionally protected speech.

_____

[2] It is difficult to discern and differentiate the precise nature of Plaintiff's claims in Counts One through Five. Plaintiff asserts each of these claims "against Defendant employer," but Plaintiff never defines which Defendant, or Defendants, is "Defendant employer." Moreover, Counts One through Five each contain largely repetitive legal conclusions with little factual support. *See, e.g.*, FAC ¶¶ 47–90. The Court construes Count One as asserting a § 1983 claim against *all* Defendants, including Underwood in his individual capacity, for violation of Plaintiff's First Amendment rights. The Court construes Counts Two through Five as asserting claims against only the District Defendants under various theories of liability pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). *See* FAC ¶¶ 63–121.

United States District Court
Northern District of California

Defendants contend, however, that Plaintiff's reports to Owens were *not* protected speech, and therefore Plaintiff cannot state a claim for First Amendment retaliation in Counts One through Five. For the reasons discussed below, the Court agrees with Defendants.

"The First Amendment shields public employees from employment retaliation for their protected speech activities." *Hagen v. City of Eugene*, 736 F.3d 1251, 1257 (9th Cir. 2013). "However, 'when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline.'" *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1056 (9th Cir. 2013) (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 421 (2006)). The Ninth Circuit "follow[s] a sequential five-step inquiry to determine whether an employer impermissibly retaliated against an employee for engaging in protected speech." *Id.* (citing *Eng. v. Cooley*, 552 F.3d 1062, 1070 (9th Cir. 2009)). "First, the plaintiff bears the burden of showing: (1) whether the plaintiff spoke on a matter of public concern; (2) whether the plaintiff spoke as a private citizen or public employee; and (3) whether the plaintiff's protected speech was a substantial or motivating factor in the adverse employment action." *Id.* (internal quotation marks and citations omitted). "Next, if the plaintiff has satisfied the first three steps, the burden shifts to the government to show: (4) whether the state had an adequate justification for treating the employee differently from other members of the general public; and (5) whether the state would have taken the adverse employment action even absent the protected speech." *Id.*

Defendants argue that Plaintiff cannot meet the second factor of this test: that Plaintiff "spoke as a private citizen" rather than as the Director of Rural Health Clinics. *See* Dist. Def. Mot. at 6. Accordingly, the Court turns to address whether the FAC plausibly alleges that Plaintiff spoke as a private citizen rather than as a public employee.

In determining whether an individual spoke as a private citizen or as a public employee, the Ninth Circuit has explained that "[s]tatements are made in the speaker's capacity as citizen if the speaker 'had no official duty' to make the questioned statements, or if the speech was not the product of 'performing the tasks the employee was paid to perform.'" *Eng*, 552 F.3d at 1071

(internal quotation marks omitted). The Ninth Circuit has identified three "guiding principles" to determine whether a plaintiff spoke as a private citizen rather than as a public employee. *Dahlia v. Rodriguez*, 735 F.3d 1060, 1074–75 (9th Cir. 2013); *see also Heath v. City of Desert Hot Springs*, 618 F. App'x 882, 884–85 (9th Cir. 2015) ("In *Dahlia*, we articulated three guiding principles for evaluating whether an individual speaks as a private citizen or as a public employee."). First, "whether or not the employee confined his communications to his chain of command is a relevant, if not necessarily dispositive, factor in determining whether he spoke pursuant to his official duties." *Dahlia*, 735 F.3d at 1074. Second, "the subject matter of the communication" is "highly relevant to the ultimate determination of whether the speech is protected by the First Amendment." *Id.* at 1074–75. Third, "when a public employee speaks in direct contravention to his supervisor's orders, that speech may often fall outside of the speaker's professional duties" and thus constitute protected speech under the First Amendment. *Id.* at 1075.

For the reasons discussed below, these three guiding principles demonstrate that Plaintiff's reports to Owens were made in Plaintiff's role as Director of Rural Health Clinics, rather than as a private citizen.

### 1. Chain of Command

First, the allegations in the FAC show that Plaintiff "confined h[er] communications to h[er] chain of command." *Dahlia*, 735 F.3d at 1074. Specifically, the FAC alleges that Plaintiff emailed and telephoned "her superior," Chief Nursing Officer Owens, and told Owens that a patient was treated after hours without being charged, and that a child had an undocumented fall in an exam room. FAC ¶¶ 29–30. Owens instructed Plaintiff to send this information to Underwood and Robinson, who are the District's CEO and CFO, respectively. *See, e.g. id.* at ¶ 30. Thus, Plaintiff raised her concerns only up her "chain of command" within the District. *Dahlia*, 735 F.3d at 1074 (internal quotation marks omitted). "[T]here is no indication that anyone outside of [the District] was made aware of the views Plaintiff expressed" in her telephone call and email to Owens. *Pyke v. Arcadis, US, Inc.*, 35 F. Supp. 3d 1093, 1100 (N.D. Cal. 2014) (finding plaintiff spoke as public employee and not as private citizen where Plaintiff sent an email "confined to his

9

United States District Court
Northern District of California

chain of command"). Accordingly, the first guiding principle from *Dahlia* suggests that Plaintiff spoke as a public employee, rather than as a private citizen. *Dahlia*, 735 F.3d at 1074; *see also Frietag v. Ayers*, 468 F.3d 528, 545–46 (9th Cir. 2006) (finding that plaintiffs internal reports to her director were not protected speech, but that her letters to an elected public official and independent state agency were protected speech).

### 2. Subject Matter of Plaintiff's Speech

Second, "the subject matter" of Plaintiff's speech suggests that Plaintiff was speaking as a public employee, rather than as a private citizen. *Id.* Indeed, the subject matter of Plaintiff's speech is directly related to Plaintiff's job duties as Director of Rural Health Clinics. Specifically, as Director of Rural Health Clinics, Plaintiff was tasked with "oversee[ing] the operation of services provided through the clinics." FAC ¶ 28. Plaintiff alleges that she was terminated after Plaintiff reported to Owens that a patient was treated after hours on March 19 without proper charging, and that a child's fall on May 13 was undocumented. According to Plaintiff, these incidences "created risk and liability exposure to the hospital." *Id.* ¶¶ 31, 39.[3] Plaintiff's concern over "risk and liability," *id.*, created by hospital operations is "inextricably intertwined" with Plaintiff's duty to oversee the operation of services provided through the clinics, which suggests that Plaintiff spoke to Owens in Plaintiff's capacity as Director of Rural Health Clinics, rather than as a private citizen. *See Hagen v. City of Eugene*, 736 F.3d 1251, 1259 (9th Cir. 2013) (finding plaintiff spoke as public employee where plaintiff raised "concerns about SWAT safety" to his superiors, which was "inextricably intertwined with [plaintiff's] duties as a K-9 officer").

Moreover, "[a]ll of [Plaintiff's] complaints involved safety concerns stemming from

---

[3] Plaintiff states in her opposition that she reported "after hours sexual encounters." Pl. Opp. at 9. However, the FAC contains no such allegations. Rather, Plaintiff alleges only that Dr. Herrick treated a female patient after hours at the clinic, and that this visit was not properly charged or documented. FAC ¶ 30. To the extent Plaintiff now asserts that she reported "sexual encounters" at the hospital, this allegation is not in the FAC and the Court may not consider it for purposes of the instant motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (explaining that, for purposes of ruling on a 12(b)(6) motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

‘particular incident[s] or occurrence[s]’” at the rural health clinics, rather than “‘broad concerns about corruption or systemic abuse.” *Id.* at 1258–59 (quoting *Dahlia*, 735 F.3d at 1075). Specifically, Plaintiff learned of Dr. Herrick’s and Lizarraga-Davis’s March 19, 22, and 29 failures to document and charge a patient’s visits to the clinic, and Plaintiff reported the incidents to Owens on March 30 or 31. FAC ¶¶ 30, 35. Similarly, “immediately upon receiving” an email on May 13 that Lizarraga-Davis had failed to properly document a child’s fall, Plaintiff sent an email to Owens about that specific incident. *Id.* ¶ 38. After Plaintiff made her complaint to Owens on May 13, Owens told Plaintiff to follow up with Lizarraga-Davis, and the FAC alleges that Lizarraga-Davis fixed the child’s medical records that same day. *Id.* ¶¶ 39–40. That Plaintiff spoke immediately to her superiors after specific incidents at the hospital further suggests that Plaintiff spoke as a public employee, rather than as a private citizen. *Hagen*, 736 F.3d at 1258–59 (finding that the plaintiff spoke as a public employee, rather than as a private citizen, where the plaintiff raised complaints to his superiors about specific incidences of accidental weapons discharges, rather than broad concerns about systemic abuse).

In sum, Plaintiff’s duties as Director of Rural Health Clinics involved “oversee[ing] the operation of services provided through the clinics,” FAC ¶ 28, and “[a]ll of [Plaintiff’s] complaints involved safety [and liability] concerns stemming from particular incidences or occurrences” within the rural health clinics. *See Hagen*, 736 F.3d at 1259 (internal quotation marks omitted). Moreover, as discussed in the first factor above, Plaintiff raised concerns over specific incidences and occurrences only “internally and within the chain of command.” *Id.* Accordingly, the second guiding principle from *Dahlia*—the subject matter of Plaintiff’s speech—suggests that Plaintiff spoke as a public employee, rather than as a private citizen. *Dahlia*, 735 F.3d at 1074–75.

### 3. Supervisor’s Orders

Finally, Plaintiff did not speak “in direct contravention to h[er] supervisor’s orders,” which further suggests that Plaintiff spoke in her capacity as Director of Rural Health Clinics, rather than as a private citizen. *Id.* at 1075. Specifically, after Plaintiff told Owens that Dr. Herrick and

United States District Court
Northern District of California

physician's assistant Lizarraga-Davis treated a patient after hours at the clinic and that the patient's visits were not properly charged, Owens "advised [Plaintiff] to send the information regarding [her] complaint to [Underwood] and [Robinson]." FAC ¶ 30. Plaintiff alleges that she reported her complaint to Robinson and Underwood "*as instructed*" by Owens. *Id.* (emphasis added). Robinson told Plaintiff that her report "had been communicated to the CEO," Underwood, who would "discuss her complaint with Dr. Herrick." *Id.* ¶ 35.

Further, after Plaintiff complained to Owens on May 13 that Lizarraga-Davis had failed to document a child's fall in the exam room, Owens "advised and instructed [Plaintiff] that documentation needed to occur." *Id.* ¶ 39. Owens "agreed and confirmed that [Plaintiff's] complaints were legitimate." *Id.* ¶ 31. Plaintiff alleges that she "follow[ed] up with CNO Owens' advice and instructions" and "immediately telephoned and spoke with P.A. Lizarraga-Davis and requested that he" document the incident. *Id.* Lizarraga-Davis fixed the child's medical records that same day. *Id.* ¶ 40.

Accordingly, the allegations in Plaintiff's FAC do not show that Plaintiff spoke "in direct contravention to h[er] supervisor's orders." *Dahlia*, 735 F.3d at 1075. To the contrary, the allegations in the FAC show that Plaintiff "appears to have done precisely what h[er] supervisors wanted h[er] to do." *Id.* at 1077. Indeed, Owens "agreed and confirmed that [Plaintiff's] complaints were legitimate," and encouraged Plaintiff to follow up about her complaints. FAC ¶¶ 31, 40. Thus, the third guiding principle from *Dahlia* suggests that Plaintiff spoke as a public employee, rather than as a private citizen. *Dahlia*, 735 F.3d at 1074.

### 4. Summary

In sum, the allegations in Plaintiff's FAC show that Plaintiff reported her concerns regarding specific incidences up her chain of command, rather than outside of the District. Moreover, Plaintiff's allegations show that the subject matter of Plaintiff's speech fell within Plaintiff's alleged job duties, and related to specific occurrences at the hospital. Finally, Plaintiff's allegations show that Plaintiff's speech was not in contravention of her supervisor's orders, but was rather condoned and affirmed by her supervisors.

12

Accordingly, under the three guiding principles of *Dahlia*, the Court finds that Plaintiff has failed to allege that she spoke as a private citizen. Rather, the allegations in the FAC show that Plaintiff spoke in her capacity as Director of the Rural Health Clinics, and thus that her speech is not protected by the First Amendment. Because Plaintiff has not alleged protected speech, all of Plaintiff's § 1983 claims for First Amendment retaliation fail. *See Hagen*, 736 F.3d at 1260 ("Hagen made his repeated internal complaints about departmental safety and officer competency only in his official capacity as an EPD officer. Hagen therefore has not established a constitutional violation."). Thus, the Court GRANTS Defendants' motions to dismiss Counts One through Five of the FAC. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts to sufficiently show that Plaintiff spoke in her capacity as a private citizen, rather than as a public employee.

### 2. Failure to State a § 1983 Claim for Violation of the Fourteenth Amendment (Counts Six through Thirteen)

Next, Defendants move to dismiss Counts Six through Sixteen, which allege § 1983 claims based on Defendants' violation of Plaintiff's Fourteenth Amendment rights. Although Plaintiff's Fourteenth Amendment allegations are difficult to discern, Plaintiff appears to bring Counts Six through Thirteen against only the District Defendants, and Plaintiff appears to allege violations of both the Equal Protection Clause and the Due Process Clause. *See* FAC ¶¶ 122–68.[4] For the reasons discussed below, the Court agrees with District Defendants that Plaintiff has not adequately alleged that District Defendants violated her Fourteenth Amendment rights under either the Equal Protection Clause or the Due Process Clause. The Court first addresses whether Plaintiff has stated a claim under the Equal Protection Clause, and then discusses whether Plaintiff has stated a claim under the Due Process Clause.

---

[4] To the extent that Plaintiff seeks to bring Counts Six through Thirteen against Underwood in his individual capacity, Plaintiff has failed to "give [Underwood] fair notice" of the claim against him in his individual capacity, and accordingly Plaintiff has failed to meet Rule 8 of the Federal Rules of Civil Procedure. *See Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. Rule 8(a)(2)). Accordingly, the Court GRANTS with leave to amend Underwood's motion to dismiss Counts Six through Thirteen to the extent Plaintiff brings Counts Six through Thirteen against Underwood in his individual capacity.

Case No. 16-CV-06922-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

### a. Fourteenth Amendment Equal Protection Clause

First, to the extent that Plaintiff intends to allege a § 1983 claim premised on Defendants' violation of Plaintiff's Fourteenth Amendment right to equal protection, Plaintiff has failed to state a claim. "To state a § 1983 claim for violation of the Equal Protection Clause, 'a plaintiff must show that the defendant acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class.'" *Lopez v. City & Cty. of San Francisco*, 2014 WL 2943417, at *11 (N.D. Cal. June 30, 2014) (quoting *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2011)). "A plaintiff may satisfy this standard by alleging (1) that he was treated differently from others similarly situated, (2) that this unequal treatment was based on an impermissible classification; (3) that the defendant acted with discriminatory intent in applying this classification; and (4) that he suffered injury as a result of the discriminatory classification." *Id.* (citing *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979)).

Plaintiff's FAC does not set forth any such allegations. The only allegations in Counts Six through Thirteen that could plausibly relate to the Equal Protection Clause are Plaintiff's conclusive statements that Plaintiff "was treated differently than other similarly situated [District] employees." *See, e.g.*, FAC ¶¶ 163 (Count Eight), 182 (Count Nine). The remaining allegations in Counts Six through Thirteen are either conclusive recitations of the elements of *Monell* liability, or relate to the Due Process Clause, which is addressed below. *See id.* ¶¶ 122–68. Plaintiff's conclusive and vague allegation that she "was treated differently than other similarly situated" employees, *id.* ¶163, fails to "give the defendant[s] fair notice" of the claims against them, and fails to plausibly suggest that the District Defendants violated the Equal Protection Clause. *See Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. Rule 8(a)(2)). Accordingly, to the extent that Plaintiff seeks in Counts Six through Thirteen to state a claim under § 1983 for the District Defendants' violation of the Fourteenth Amendment's Equal Protection Clause, Plaintiff has failed to state a claim. The Court accordingly GRANTS Defendants' motion to dismiss Counts Six through Thirteen to the extent Plaintiff asserts a violation of the Equal Protection Clause. The Court affords leave to amend because Plaintiff may be able to allege an Equal Protection Clause

violation.

**b. Fourteenth Amendment Due Process Clause**

Second, to the extent that Plaintiff alleges in Counts Six through Thirteen that the District Defendants violated Plaintiff's Fourteenth Amendment right to due process, the Court also agrees with the District Defendants that Plaintiff has failed to state a claim. To establish a § 1983 claim based on a violation of procedural due process, a plaintiff must establish (1) a protected liberty or property interest; and (2) "a denial of adequate procedural protections." *Pinnacle Armor, Inc. v. United States*, 648 F.3d 708, 716 (9th Cir. 2011) (internal quotation marks omitted). The guarantees of the Due Process Clause of the Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is at stake. *See Johnson v. Rancho Santiago Comm. Coll. Dist.*, 623 F.3d 1011, 1029 (9th Cir. 2010) ("[T]o succeed on a substantive or procedural due process claim, the plaintiffs must first establish that they were deprived of an interest protected by the Due Process clause."); *Neal v. Shimoda*, 131 F.3d 818, 827–28 (9th Cir. 1997). "Protected property interests are not created by the Constitution[, but r]ather . . . they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Johnson*, 623 F.3d at 1030 (internal quotation marks omitted).

The Court agrees with Defendants that Plaintiff has not alleged a protected property interest in her continued employment. "Under California law, public employees that are employed at-will do not have property interests in continued employment." *Linder v. Golden Gate Bridge, Highway & Transp. Dist.*, 2015 WL 4623710, at *4 (N.D. Cal. 2016). California Health and Safety Code § 32121(h) provides that "[t]he officers and employees" of local health care districts—such as Plaintiff—"shall hold their offices or positions at the pleasure of the boards of directors." Cal. Health & Safety Code § 32121(h). "The phrase 'at pleasure' means one is an at-will employee who can be fired without cause." *Linder*, 2015 WL 4623710, at *4 (quoting *Hill v. City of Long Beach*, 33 Cal. App. 4th 1684, 1694 (Cal. Ct. App. 1996)); *see also Klepper v. City of Page*, 206 F. App'x 692, 694 (9th Cir. 2006) ("Because [Plaintiff] served at the pleasure of the

15

United States District Court
Northern District of California

City Council, he had no property right in his continued employment.")  Accordingly, Plaintiff is an at-will employee under California law, and Plaintiff "has no property interest in the job." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  Because Plaintiff has no property interest in her job, "[a]n action under the Due Process Clause cannot lie for h[er] termination." *Id.* at 905.

Plaintiff does not contest that the California Health and Safety Code defines her as an at-will employee.  *See* Pl. Opp. at 12–13.  Plaintiff has also not identified any other "independent source" that provides Plaintiff with a property right in her employment.  *Johnson*, 623 F.3d at 1030.  Rather, Plaintiff asserts in her opposition that Plaintiff had an "exemplary tenure as Director of Rural Clinics," and that she was thus entitled to notice and an opportunity to respond prior to her termination.  Pl. Opp. at 12.  According to Plaintiff, it is "arbitrary" that California defines Plaintiff as an at-will employee while other county employees are defined differently and thus entitled to pre-termination procedures.  *Id.* at 13.

However, as set forth above, property interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law."  *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).  California law provides that employees of health care districts "shall hold their offices or positions at the pleasure of the boards of directors."  Cal. Hlth. & Safety § 32121(h).  Although Plaintiff may have a "unilateral expectation" that, after years of service for the District, she has a property right to her employment, Plaintiff's "unilateral expectation" is not sufficient to create a property right in her employment.  *Roth*, 408 U.S. at 576.  "[U]nless [Plaintiff] can allege facts that, contrary to th[e] statutory language [of California Health and Safety Code § 32121(h),] [s]he is not an employee at will, [s]he cannot state a claim for violations of due process in terminating h[er] employment under § 1983."  *Linder*, 2015 WL 1778608, at *5.

Thus, because Plaintiff does not have a property interest in her employment under California law, and because Plaintiff has not identified any other independent source providing Plaintiff with a property interest in her employment, the Court GRANTS Defendants' motion to

16

dismiss Counts Six through Thirteen. The Court affords Plaintiff leave to amend her § 1983 claims premised on Defendants' violation of the Fourteenth Amendment because Plaintiff may be able to allege facts sufficient to state a claim. *Id.* (providing Plaintiff leave to amend Fourteenth Amendment claim premised on termination of her employment, even though Plaintiff's employment appeared to be at will under California law).

### 3. Summary of § 1983 Claims

In sum, the Court concludes that Plaintiff has failed to state a claim in Counts One through Thirteen against Defendants for violation of § 1983. Plaintiff cannot state a claim in Counts One through Five for violation of Plaintiff's First Amendment rights because Plaintiff has failed to allege that her speech is constitutionally protected. Plaintiff cannot state a claim in Counts Six through Thirteen for violation of Plaintiff's Fourteenth Amendment rights because Plaintiff has not adequately alleged an equal protection violation or a due process violation. Because the Court dismisses Counts One through Thirteen for the reasons discussed above, the Court need not reach Defendants' remaining arguments regarding Plaintiff's § 1983 claims.[5]

### B. Claims for Gender Discrimination under Title VII and FEHA (Counts Fourteen and Eighteen)

Plaintiffs alleges in Counts Fourteen and Eighteen that the District Defendants discriminated against Plaintiff on the basis of her gender, in violation of Title VII and FEHA, respectively. FAC ¶¶ 269–79; 309–24.[6] District Defendants move to dismiss Counts Fourteen

---

[5] The Court need not reach the District Defendants' secondary Eleventh Amendment immunity argument at this time "[b]ecause the Eleventh Amendment is more appropriately considered an affirmative defense than a jurisdictional bar." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, n. 8 (9th Cir. 2001). Moreover, neither party has provided the Court with sufficient facts regarding the operations of the District, and the parties have not briefed how these facts fit within the five factors that the Ninth Circuit uses to "determine whether a governmental agency is an arm of the state." *Mitchell v. Los Angeles Comm. College Dist.*, 861 F.2d 198 (9th Cir. 1988).

[6] Again, Plaintiff appears to bring Counts Fourteen and Eighteen against the District Defendants only, and not Underwood in his individual capacity. To the extent that Plaintiff seeks to bring Counts Fourteen and Eighteen against Underwood in his individual capacity, Plaintiff has failed to "give [Underwood] fair notice" of the claim against him in his individual capacity, and accordingly Plaintiff has failed to meet Rule 8 of the Federal Rules of Civil Procedure. *See Twombly*, 550 U.S. at 555 (quoting Fed. R. Civ. P. Rule 8(a)(2)). Accordingly, the Court GRANTS with leave to amend Underwood's motion to dismiss to the extent Plaintiff brings gender discrimination claims against Underwood in his individual capacity.

17

and Eighteen because Plaintiff has not alleged sufficient facts to raise a plausible claim for gender discrimination. For the reasons discussed below, the Court agrees with District Defendants.

Claims of "gender discrimination under Title VII and FEHA are decided under the same standard." *Nagar v. Found. Health Sys., Inc.*, 57 F. App'x 304, 306 n.4 (9th Cir. 2003). In order to state a claim, the plaintiff must allege that the plaintiff: "(1) belongs to a protected class, (2) performed h[er] job satisfactorily, (3) suffered an adverse employment action, and (4) the employer treated h[er] differently because of h[er] membership in the protected class." *McCarthy v. Brennan*, 2016 WL 946099, at *4 (N.D. Cal. Mar. 14, 2016) (citing *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1029 (9th Cir. 2006)). "The fourth element—that the plaintiff was subjected to adverse employment action *because of* h[er] membership in a protected class—can be alleged either through direct evidence of discrimination, such as a supervisor's derogatory comment about h[er gender], or through circumstantial evidence, which may include allegations that similarly situated individuals outside the plaintiff's protected class were treated more favorably or that other circumstances surrounding the at-issue employment action give rise to an inference of discrimination." *Id.* (internal citations omitted).

The only factual allegation in Plaintiff's FAC regarding gender discrimination is that "CEO Underwood identified and targeted only women employees who had raised and reported complaints of substandard and unsafe patient care to be terminated during the 'restructuring,'" and that "[n]o male providers' positions were identified for elimination in the CEO's new restructure." FAC ¶ 46. For several reasons, this sole factual allegation is insufficient to "give rise to an inference of discrimination" such that Plaintiff has stated a plausible claim. *Id.*

First, although Plaintiff alleges that "no male providers" were terminated during the restructuring, Plaintiff 's FAC fails to allege whether these male employees were similarly situated to Plaintiff—i.e., that they held similar positions to Plaintiff, and that they similarly raised and reported complaints of substandard patient care. *Vasquez v. Cty. of L.A.*, 349 F.3d 634, 641 (9th Cir. 2003) ("[I]ndividuals are similarly situated when they have similar jobs and display similar conduct."). Absent any such allegation, Plaintiff's allegation that "no male providers" were

18

terminated does not raise a plausible inference of gender discrimination. *See Martinez v. Nat'l R.R. Pass. Corp.*, 438 F. App'x 595, 595 (9th Cir. 2011) (affirming district court's dismissal of gender discrimination claim where the complaint failed to allege any direct evidence of gender discrimination, such as a derogatory comment, or circumstantial evidence of gender discrimination, "such as a similarly situated female employee who was not fired" for engaging in similar conduct); *see also McCarthy*, 2016 WL 946099, at \*6 (granting motion to dismiss Title VII claim where the plaintiff failed to allege that the defendant terminated similarly situated non-Caucasian employees, "or any other facts that demonstrate intent to discriminate").

Second, although Plaintiff alleges that the District Defendants "targeted only women employees who had raised and reported complaints of substandard unsafe patient care" to be terminated, the FAC contains *no* allegations regarding how many other women lost their jobs during this restructuring, what their positions were, or how these women had reported complaints of substandard and unsafe patient care at the hospital. *See* FAC ¶ 46. Indeed, at other points in the FAC, Plaintiff alleges that Underwood undertook a "campaign to eliminate [*Plaintiff's*] position" after Plaintiff made reports to Owens about the undocumented patient care at the hospital, and that Underwood told Owens "there would now not be a need for a nurse director," which suggests that only Plaintiff's position was eliminated. *See id.* ¶¶ 44–45. Further, Plaintiff's FAC fails to allege when—or even if—this restructuring actually occurred. *See id*. at ¶¶ 44–46. Plaintiff alleges that Owens spoke to her about the restructuring in June 2016, but Plaintiff alleges that she was terminated on October 11, 2016, and Plaintiff provides no factual details about the circumstances surrounding her termination in October 2016. *See id.* ¶ 26.

In sum, Plaintiff offers only vague and conclusory allegations that her termination was because of Plaintiff's gender, which is insufficient to state a plausible claim for relief. *See Ryan v. Santa Clara Valley Transp. Auth.*, 2017 WL 1175596, at \*13–15 (N.D. Cal. March 30, 2017) (dismissing discrimination claims asserted under state and federal law where the conclusive allegations in the complaint failed to plausibly give rise to an inference of discrimination). Accordingly, the Court GRANTS Defendants' motion to dismiss Counts Fourteen and Eighteen.

19

1     The Court affords Plaintiff leave to amend because Plaintiff may be able to allege facts that

2 plausibly state a claim for gender discrimination in violation of Title VII and FEHA.

3 **C.       State Law Claims against District Defendants (Counts Fifteen through Seventeen)**

4     Plaintiff asserts in Counts Fifteen through Seventeen state law causes of action against

5 District Defendants.  Specifically, Plaintiff alleges in Count Fifteen that District Defendants

6 violated California Health and Safety Code § 127.5 by firing Plaintiff in retaliation for her reports

7 to Owens.  Plaintiff asserts in Count Sixteen that District Defendants violated California Labor

8 Code § 1101 by firing Plaintiff in retaliation for "engag[ing] in her fundamental right to free

9 political speech."  Plaintiff alleges in Count Seventeen that District Defendants were negligent, in

10 violation of California Government Code § 815.2, by firing Plaintiff in violation of her

11 constitutional rights.  *See* FAC ¶¶ 280–308.

12     District Defendants move to dismiss these claims.  Specifically, District Defendants assert

13 that all three claims fail because Plaintiff failed to exhaust her administrative remedies, as required

14 by California law.  Further, District Defendants assert that Counts Sixteen and Seventeen fail for

15 the additional and independent reason that Plaintiff has not alleged plausible claims.  The Court

16 addresses Counts Fifteen through Seventeen in turn below.

17     **1. Retaliation in Violation of Health and Safety Code § 1278.5 (Count Fifteen)**

18     Plaintiff asserts in Count Fifteen that District Defendants violated California Health and

19 Safety Code § 1278.5, which states that "[n]o health facility shall discriminate or retaliate, in any

20 manner, against any patient, employee . . . or any other health care worker of the health facility

21 because that person has . . . [p]resented a grievance, complaint, or report to the facility," or to "the

22 medical staff of the facility, or to any other governmental entity."  Cal. Health & Safety Code §

23 1278.5(b)(1)(A); *see* FAC ¶¶ 280–82.  Plaintiff seeks to recover damages under this claim.  FAC ¶

24 283.  District Defendants contend that this claim must be dismissed because Plaintiff failed to

25 present her claim to the District prior to bringing suit, as required by the California Government

26 Claims Act.  Dist. Def. Mot. at 20.  For the reasons discussed below, the Court agrees with District

27 Defendants.

28

20

"Under the [California Government Claims] Act . . . no person may sue a public entity or public employee for damages unless such person has presented a timely written claim to the public entity, which the public entity has then rejected." *Apollo v. Gyaami*, 167 Cal. App. 4th 1468, 1487 n. 14 (Cal. Ct. App. 2008) (citing Cal. Gov. Code § 945.4); *see also Gen. Sec. Serv. Corp. v. Cty. of Fresno*, 815 F. Supp. 2d 1123, 1131 (E.D. Cal. Sept. 2, 2011) ("As a prerequisite for filing suit for 'money or damages' against a public entity, the California Government Claims Act requires presentation of a claim to the public entity."). "A suit for 'money or damages' includes all actions where the plaintiff is seeking monetary relief, regardless whether the action is founded in 'tort, contract or some other theory.'" *Lozada v. City & Cty. of San Francisco*, 145 Cal. App. 4th 1139, 1152 (Cal. Ct. App. 2006) (quoting *Hart v. Cty. of Alameda*, 76 Cal. App. 4th 766, 778 (Cal. Ct. App. 1999)). "'[F]ailure to allege facts demonstrating or excusing compliance with the claim presentation requirement subjects a claim against a public entity to a demurrer for failure to state a cause of action.'" *D.V. v. City of Sunnyvale*, 65 F. Supp. 3d 782, 786 (N.D. Cal. Aug. 14, 2014) (quoting *State v. Superior Court (Bodde)*, 32 Cal. 4th 1234, 1239 (2004)).

District Defendants assert that the FAC alleges only that Plaintiff submitted her claim to the County of San Benito, who is a separate public entity from the District. Dist. Def. Mot. at 21. Plaintiff does not contest that the FAC does not allege that Plaintiff submitted her claim to the District. *See* Pl. Opp. at 16. Rather, Plaintiff asserts that "had the District cared to look in its own files it would have found a July 12, 2016 time stamped copy of Tort Claim addressed to the San Benito Health Care District which set out the claims which [Plaintiff] now forthrightly asserts in her FAC." *Id.* at 16.

However, even if the District's "own files" show that Plaintiff submitted a claim to the District on July 12, 2016, Plaintiff's FAC fails to contain any such allegations. *See generally* FAC. As district courts within this Circuit have recognized, "the complaint must include facts demonstrating compliance with the claim presentation requirement or the claim will be dismissed." *D.V.*, 65 F. Supp. 3d at 786 (dismissing complaint where the complaint contained no allegations of compliance, even though plaintiff attached an exhibit to their opposition to

United States District Court
Northern District of California

defendant's motion to dismiss that showed compliance); *Amatrone v. Champion*, 2015 WL 5591614, at *8 (N.D. Cal. Sept. 23, 2015) (same). Plaintiff asserts only in her opposition that she submitted a claim to the District, and the Court may not consider facts raised only in the opposition in ruling on a motion to dismiss. *See Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (explaining that, for purposes of ruling on a 12(b)(6) motion to dismiss, the Court is limited to "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice").

Accordingly, because the FAC fails to allege compliance with the Government Claims Act, the Court GRANTS Defendants' motion to dismiss Count Fifteen. The Court grants Plaintiff leave to amend because Plaintiff may be able to allege facts showing compliance with the presentation requirement of the Government Claims Act.

### 2. Retaliation in Violation of California Labor Code § 1101 (Count Sixteen)

Plaintiff alleges in Count Sixteen that Defendants violated California Labor Code § 1101, which states that "[n]o employer shall make, adopt, or enforce any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office; (b) controlling or directing, or tending to control or direct the political activities or affiliations of employees." Cal. Lab. Code § 1101. Plaintiff seeks monetary damages under this claim. *Id.* ¶¶ 289–94. For several reasons, this claim must be dismissed.

As an initial matter, as discussed above with regards to retaliation under California Health and Safety Code § 1278.5, Plaintiff has failed to allege that she presented her California Labor Code § 1101 claim to the District prior to filing suit. *See generally* FAC. Again, California's Government Claims Act requires that Plaintiff present such claims to the District, and Plaintiff's FAC must allege compliance with this requirement. *D.V.*, 65 F. Supp. 3d at 786 ("[T]he complaint must include facts demonstrating compliance with the claim presentation requirement or the claim will be dismissed."). Accordingly, because Plaintiff's FAC does not contain any allegation that Plaintiff presented her claim to the District prior to bringing suit, Plaintiff has failed to state a claim against the District Defendants in Count Sixteen.

In addition, Count Sixteen must be dismissed because Plaintiff herself concedes that the FAC fails to state a claim for violation of California Labor Code § 1101. *See* Pl. Opp. at 17. As set forth above, California Labor Code § 1101 provides that an employer may not adopt or enforce a policy that prevents employees from engaging in politics or "direct[s] the political activities or affiliations of employees." Cal. Lab. Code § 1101. Plaintiff's FAC contains *no* allegations regarding Plaintiff's political activities or affiliations, or that her employer prevented her from engaging in politics or directed her political activities. *See generally* FAC.

Plaintiff states in her opposition that she intended to bring a cause of action in Count Sixteen for violation of California Labor Code *§ 1102.5*, not California Labor Code § 1101. Pl. Opp. at 17. California Labor Code § 1102.5 provides that

> [a]n employer . . . shall not retaliate against an employee for disclosing information . . . to a government or law enforcement agency, to a person with authority over the employee or another employee who has the authority to investigate, discover or correct the violation or noncompliance . . . if the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation of or noncompliance with a local, state, or federal rule or regulation.

Cal. Lab. Code § 1102.5(b). According to Plaintiff, the FAC adequately alleges a cause of action under this statute, and Plaintiff requests leave to amend to cite § 1102.5. Pl. Opp. at 17–18.

However, even assuming that Plaintiff had correctly cited § 1102.5 in Count Sixteen, the FAC still fails to state a claim for violation of § 1102.5. Specifically, the FAC contains no allegations that Plaintiff "ha[d] reasonable cause to believe that" the information she conveyed to Owens "disclose[d] a violation of state or federal statute" or a regulation. *See* Cal. Labor Code § 1102.5; *see also Boyd v. Autozone, Inc.*, 2011 WL 13153245, at *4 (N.D. Cal. Mar. 28, 2011) (stating that an employee engages in protected activity under California Labor Code § 1102.5 when the employee discloses "reasonably based suspicions of illegal activity" (internal quotation marks omitted)). Accordingly, even assuming that Plaintiff had cited § 1102.5 in Count Sixteen, as opposed to § 1101, Plaintiff's FAC still fails to state a claim because Plaintiff does not allege that she reported information that she believed disclosed a violation of law. For this additional

23

reason, Count Sixteen must be dismissed.

Thus, the Court GRANTS the District Defendants' motion to dismiss Count Sixteen. Plaintiff has failed to allege compliance with the presentation requirement of the Government Claims Act, and Plaintiff has failed to state a claim under either § 1101 or § 1102.5. The Court affords Plaintiff leave to amend this claim to allege compliance with the Government Claims Act and to adequately state a claim.

### 3. Negligence in Violation of California Government Code § 815.2 (Count Seventeen)

Plaintiff alleges in Count Seventeen a cause of action against "all Defendants" for negligence in violation of California Government Code § 815.2. FAC ¶¶ 295–98. Plaintiff appears to assert in Count Seventeen that Underwood was negligent in firing Plaintiff, and that the District Defendants are liable under California Government Code § 815.2 for Underwood's negligence.[7]

"Under California law, the elements of negligence are: (1) defendant's obligations to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." *Corales v. Bennett*, 567 F.3d 554, 572 (9th Cir. 2009). "A county can be held liable for negligence of an employee under California Government Code § 815.2," which provides that "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this

---

[7] It is unclear from the FAC whether Plaintiff intends to assert a claim for negligence against Underwood in his individual capacity. Although Plaintiff brings this claim against "all Defendants," Count Seventeen cites only to California Government Code § 815.2, which "appl[ies] only to public entities and [is] not applicable to individual defendants." *E.F. v. Delano Joint Union High Sch. Dist.*, 2016 WL 5846998, at *11 (E.D. Cal. Oct. 6, 2016). Accordingly, to the extent that Plaintiff intends to assert a claim against Underwood in his individual capacity under § 815.2, the Court GRANTS Underwood's motion to dismiss with prejudice. *Id.* To the extent that Plaintiff intends to assert a negligence cause of action against Underwood under common law or some other statute, Plaintiff has failed to state a claim for negligence, as discussed above. Accordingly, the Court GRANTS Underwood's motion to dismiss with leave to amend to the extent Plaintiff states a claim against Underwood for common law negligence or violation of a statute other than California Government Code § 815.2.

24

section, have given rise to a cause of action against that employee or his personal representative.'" *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 936 (E.D. Cal. Jan. 6, 2015) (quoting Cal. Gov't Code § 815.2(a)).

As with Counts Fifteen and Sixteen discussed above, Plaintiff's claim against the District Defendants for violation of California Government Code § 815.2 must be dismissed because Plaintiff has failed to allege compliance with the presentation requirement of the Government Claims Act. *D.V.*, 65 F. Supp. 3d at 786 ("[T]he complaint must include facts demonstrating compliance with the claim presentation requirement or the claim will be dismissed."). Again, Plaintiff has not alleged that she presented her claim against the District to the District prior to filing suit, and thus Plaintiff has failed to state a claim in Count Seventeen. *See generally* FAC.

In addition, the Court agrees with District Defendants and Underwood that Count Seventeen must be dismissed for the additional reason that Plaintiff has failed to adequately allege a cause of action for negligence. Count Seventeen of Plaintiff's FAC consists only of legal conclusions, without any supporting factual allegations. *See* FAC ¶¶ 295–98. For example, Plaintiff alleges that Underwood "was negligent in implementing all adverse actions against" Plaintiff, and that a reasonably prudent manager "would not violate the Constitutional and other rights of [Plaintiff] as herein alleged." *Id.* ¶ 298. This is not sufficient to state a plausible claim. First, as the United States Supreme Court has explained, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" is insufficient under Rule 8 of the Federal Rules of Civil Procedure. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Second, Plaintiff's negligence claim is solely premised on Underwood's firing of Plaintiff in violation of Plaintiff's "Constitutional and other rights." *See* FAC ¶298. However, as discussed above regarding the other claims in Plaintiff's FAC, Plaintiff has not adequately alleged that Defendants violated Plaintiff's First or Fourteenth Amendment rights, or that Defendants have violated any other federal or state statute. Accordingly, even assuming that a negligence cause of action could be premised on Defendants' violation of Plaintiff's "Constitutional and other rights," Plaintiff has not sufficiently alleged in her FAC that Defendants have violated Plaintiff's rights.

*Id.*

Thus, the Court GRANTS Defendants' motions to dismiss Count Seventeen. Plaintiff cannot state a claim against District Defendants because Plaintiff has not complied with the California Government Claims Act's presentation requirement, and Plaintiff cannot state a claim against either the District Defendants or Underwood in his individual capacity because Plaintiff has not adequately alleged facts to support a negligence cause of action. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege sufficient facts to state a claim against Defendants for negligence.

**D.    Intentional Infliction of Emotional Distress against Underwood in his Individual Capacity (Count Nineteen)**

Finally, Plaintiff alleges in Count Nineteen a cause of action for intentional infliction of emotional distress ("IIED"). Plaintiff alleges this cause of action against only Underwood, presumably in his individual capacity. FAC ¶¶ 325–28. "The elements of intentional infliction of emotional distress are '(1) outrageous conduct by the defendant; (2) intention to cause or reckless disregard of the probability of causing emotional distress; (3) severe emotional suffering; and (4) actual and proximate causation of the emotional distress.'" *Bass v. City of Fremont*, 2013 WL 891090, at *7 (N.D. Cal. Mar. 8, 2013) (quoting *Wong v. Tai Jing*, 189 Cal. App. 4th 1354, 1376 (2010)). "The conduct must be so extreme as to 'exceed all bounds of that usually tolerated in a civilized community,' and the distress so severe 'that no reasonable person in a civilized society should be expected to endure it.'" *Hines v. Cal. Pub. Utils. Comm'n*, 2008 WL 2631361, at *10 (N.D. Cal. June 30, 2008) (internal citations and alterations omitted). Underwood moves to dismiss this claim on two bases. First, Underwood asserts that Plaintiff's IIED claim is preempted by California's Workers' Compensation Act, Cal. Labor Code § 3200 *et seq*. Second, Underwood contends that, even assuming Plaintiff's claim is not preempted, Plaintiff has failed to state a claim. *See* Underwood Mot. at 10–11. For the reasons discussed below, the Court agrees with Underwood.

**1. Preemption Under the Workers' Compensation Act**

26

First, the Court agrees that Plaintiff's IIED claim is preempted by California's workers' compensation laws. California's "Workers' Compensation Act provides the exclusive remedy for injuries sustained in connection with 'actions that are a normal part of the employment relationship.'" *Ferretti v. Pfizer, Inc.*, 2012 WL 3638541, at *10 (N.D. Cal. Aug. 22, 2012) (quoting *Singh v. Southland Stone, U.S.A., Inc.*, 186 Cal. App. 4th 338, 367 (2010)). "These actions include 'demotions, promotions, [and] criticism of work practices.'" *Id.* (quoting *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal. 3d 148, 160 (Cal. 1987)). "Such actions fall within the scope of the Workers Compensation Act regardless of whether they can 'be characterized as 'manifestly unfair, outrageous, harassment, or intended to cause emotional disturbance.'" *Id.* (quoting *Singh*, 186 Cal. App. 4th at 367).

The California Supreme Court has recognized that there are exceptions to the preemption rule for "conduct that 'contravenes fundamental public policy' . . . [and] conduct that 'exceeds the risks inherent in the employment relationship.'" *Miklosy v. The Regents of the Univ. of Cal.*, 44 Cal. 4th 876, 902–3 (Cal. 2008). However, the California Supreme Court has held that these exceptions do not apply to an IIED claim premised on allegations of whistleblower retaliation. *Id.* at 903. In *Miklosy*, the California Supreme Court "reasoned that the first exception" to the preemption rule—for conduct that contravenes fundamental public policy—is "meant to permit actions for wrongful termination in violation of a public policy (and not IIED claims)." *Ferretti*, 2012 WL 3638541, at *11 (citing *Miklosy*, 44 Cal. 4th at 902–03). Further, the *Miklosy* Court found that the second exception—for conduct that "exceeds the risks inherent in the employment relationship"—does not apply where "the alleged misconduct, including plaintiff's allegations of 'whistleblower retaliation,' 'occurred at the worksite, in the normal course of the employer-employee relationship' and, thus, did not exceed the 'risk[s] inherent in the employment relationship." *Id.* (quoting *Miklosy*, 44 Cal. 4th at 902–03).

In the instant case, Plaintiff alleges that Underwood "engaged in extreme and outrageous conduct by retaliating against [Plaintiff] for her participation in a statutorily protected activity, including complaining about patient care and safety." *See* FAC ¶ 326. Accordingly, Plaintiff's

27

IIED claim is based only on Underwood's termination of Plaintiff in retaliation for Plaintiff's complaints to Owens which, "occurred at the worksite, in the normal course of the employer-employee relationship." *Ferretti*, 2012 WL 3638541, at *11 (internal quotation marks omitted). As set forth above, "an IIED claim based on such conduct" is preempted. *Id.* (finding IIED claim preempted where the Plaintiff "allege[d] that she suffered severe emotional distress after she was subjected to 'harassment, retaliation, threats, and termination for reporting . . . unlawful and unethical conduct'"); *see also Langevin v. Fed. Exp. Corp.*, 2015 WL 1006367, at *11–12 (C.D. Cal. Mar. 6, 2015) (finding IIED claim preempted where the Plaintiff alleged severe emotional distress after he was retaliated against for protected whistleblower activity). Indeed, Plaintiff failed to file an opposition to Underwood's motion to dismiss, and thus Plaintiff has not contested Underwood's assertion that her claim is preempted by California's Worker's Compensation Law. *See generally* Pl. Opp.; Underwood Reply at 2.

Accordingly, because Plaintiff's claim is preempted by California's Workers' Compensation Act—and because Plaintiff does not contest this fact— the Court GRANTS Underwood's motion to dismiss Count Nineteen. Although some Courts have dismissed IIED claims with prejudice after finding that the claim was preempted, *see, e.g.*, *Green v. Cox Comm'ns, Inc.*, 2016 WL 308591, at *2 (S.D. Cal. Jan. 25, 2016) ("Green's emotional distress claims are preempted and therefore they're dismissed with prejudice"), other Courts have dismissed IIED claims without prejudice after finding that the claim as alleged was preempted, *see Howard v. Contra Costa Cty.*, 2014 WL 824218, at *19 (N.D. Cal. Feb. 28, 2014) (granting leave to amend after finding IIED claim preempted by Workers' Compensation Act). Out of an abundance of caution, the Court will afford Plaintiff leave to amend her IIED claim because Plaintiff may be able to allege facts to show that her IIED claim is not preempted by California's Workers' Compensation Act.

### 2. Failure to State a Claim

Second, even assuming that Plaintiff's claim was not preempted by California's Worker's Compensation Act, the Court further finds that Plaintiff's IIED claim must be dismissed because

28

Plaintiff has failed to state a claim for relief. Specifically, Plaintiff has not alleged that Underwood's conduct was of the extreme and outrageous nature required to state a claim for IIED, and Plaintiff has not sufficiently alleged that she has suffered severe emotional distress.

"Under California law, '[a] simple pleading of personnel management activity is insufficient to support a claim of intentional infliction of emotional distress, *even if improper motivation is alleged.*'" *Metoyer v. Chassman*, 248 F. App'x 832, 835 (9th Cir. 2007) (quoting *Janken v. GM Hughes Elecs.*, 46 Cal. App. 4th 55, 80 (1996)). Here, Plaintiff's "IIED claim is based on her termination, a discrete act." *Id.* Plaintiff alleges only that Underwood "engaged in extreme and outrageous conduct by retaliating against [Plaintiff] for her participation in a statutorily protected activity," and that this was "intentional and caused [Plaintiff] to suffer severe emotional distress." FAC ¶¶ 325–28. Accordingly, "[Plaintiff's] termination is the only basis alleged for the infliction of emotional distress," which is insufficient to state an IIED claim. *Barrera v. Fed. Exp. Corp.*, 2008 WL 4414723, at *3 (N.D. Cal. Sept. 26, 2008); *see also Metoyer*, 248 F. App'x at 835 ("Metoyer's allegations that she was improperly terminated simply do not make out a claim of intentional infliction of emotional distress"); *Walker v. Boeing Corp.*, 218 F. Supp. 2d 1177, 1190 (C.D. Cal. May 9, 2002) ("Terminating an employee for improper or discriminatory reasons . . . is insufficiently extreme or outrageous to give rise to a claim for intentional infliction of emotional distress."). Further, Plaintiff alleges only that she "suffer[ed] severe emotional distress" as a result of Underwood's acts. FAC ¶ 327. However, "[t]he conclusory allegation that Plaintiff suffered emotional distress is insufficient" to state a plausible claim. *Steshenko v. Gayrard*, 70 F. Supp. 3d 979, 1000 (N.D. Cal. Sept. 29, 2014).

Accordingly, for these additional reasons, the Court GRANTS Defendant's motion to dismiss. The Court affords Plaintiff leave to amend because Plaintiff may be able to allege a viable IIED claim. *See Barrera*, 2008 WL 4414723, at *3 (granting Plaintiff leave to amend IIED claim even though claim appeared premised only on Plaintiff's termination).

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS with leave to amend Defendants' motions

Case No. 16-CV-06922-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

to dismiss.  Should Plaintiff elect to file an amended complaint curing the deficiencies identified in this order, Plaintiff shall do so within twenty-one (21) days of the date of this order.  Failure to meet this deadline, or failure to cure the deficiencies identified in this order, will result in a dismissal with prejudice.  Further, in any amended complaint, Plaintiff must adequately specify which causes of action are brought against which Defendants such that the Defendants are aware of which claims are brought against them.  *See Salazar v. Cty. of Orange*, 564 F. App'x 322, 322–23 (9th Cir. 2014) (affirming district court's dismissal of complaint where the defendants were left "guessing [which] claim [wa]s brought against" which defendant).  Plaintiff may not add new parties or claims without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: May 25, 2017

_____

LUCY H. KOH
United States District Judge

Case No. 16-CV-06922-LHK
ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS